IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| NICOLE D., ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:23cv131 |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security[1], ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Pro se Plaintiff Nicole D. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Martin O'Malley, the Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 11.

Presently before the Court is Plaintiff's brief in support of reversal and remand of the Commissioner's decision denying benefits, ECF No. 20, and the Commissioner's brief in support of the Commissioner's decision denying benefits, ECF No. 21. After reviewing the briefs, the

---

[1] Plaintiff brought the instant Complaint against "Social Security." ECF No. 3. The proper Defendant in this case is the Commissioner of Social Security. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Martin O'Malley for "Social Security" as the Defendant in this case.

undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **VACATED** and **REMANDED.**

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on May 21, 2020, alleging disability due to fibromyalgia, anxiety, depression, scoliosis, nerve damage, learning disability, and acid reflux. R. at 61, 162.[2] Plaintiff's application was initially denied on July 7, 2021, and again denied upon reconsideration on December 9, 2021. R. at 74, 87. Plaintiff then requested a hearing before an administrative law judge. R. at 109.

A hearing was held on June 14, 2022, at which Plaintiff appeared with counsel before Administrative Law Judge Maryann Bright ("the ALJ"). R. at 34–59. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 40–59. On August 10, 2022, the ALJ issued a decision finding Plaintiff not disabled. R. at 10–24. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on February 1, 2023, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted her administrative remedies, on March 30, 2023, Plaintiff filed a pro se Complaint for judicial review of the Commissioner's decision. ECF No. 3. On October 11, 2023, Plaintiff filed a brief in support of reversal and remand of the Commissioner's decision.[3] ECF No. 20. On November 1, 2023, the Commissioner filed a brief in support of the Commissioner's

---

[2] "R." refers to the certified administrative record that was filed under seal on June 26, 2023, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1). ECF No. 10.

[3] Plaintiff initially failed to file a brief in support of reversal and remand within the deadline provided by the Court. *See* ECF No. 12. Accordingly, the Commissioner filed a Motion to Dismiss for Lack of Prosecution, ECF No. 14. That motion is discussed in further detail in Section VII, *supra.*

decision denying benefits.  ECF No. 21.  Plaintiff did not file a reply brief.  Because the matter is fully briefed, it is now ripe for recommended disposition.

## II.  <u>RELEVANT FACTUAL BACKGROUND</u>

The Record included the following factual background for the ALJ to review:

Plaintiff was thirty-five years old at the time of her application for disability benefits.  R. at 60.  Plaintiff lives with her fiancé and her child.  R. at 40–41.  Plaintiff does not have a driver's license and has never had one.  R. at 41.  She completed some college.  R. at 41.

### A.  Plaintiff's Medical Records Relevant to her Alleged Physical Impairments[4]

Dr. Julia Reon ("Dr. Reon") initially considered a fibromyalgia diagnosis for Plaintiff, R. at 361, and in December 2019, she confirmed her belief that Plaintiff "likely has fibromyalgia," and "started her on treatment for such . . ."  R. at 347.  On October 21, 2020, Plaintiff presented for a telehealth visit with Physician Assistant William Morrison ("P.A. Morrison"), complaining of pain in her lower back and shoulders, and feeling weak over the last few days.  R. at 587–88.  P.A. Morrison's treatment note reflects that Plaintiff has a "greater than 10-year duration of [fibromyalgia]," and that she feels symptoms in her joints, arms, and legs, and experiences neuropathy as well.  R. at 588.  He prescribed Lyrica.[5]  R. at 588.  At a follow-up telehealth appointment, Plaintiff reported an improvement in her symptoms, though she did experience dizziness as a side effect of Lyrica.  R. at 584–85.  At a January 2021 appointment with P.A. Morrison, she rated her pain as a zero to one out of ten with her treatment plan.  R. at 578.  Additionally in January 2021, Plaintiff presented to the emergency room complaining of a migraine that persisted for several days.  R. at 652, 658.  Upon her discharge from the hospital,

---

[4] Because Plaintiff's mental impairments are not at issue, the Court does not address Plaintiff's medical records relating to her mental impairments.
[5] Lyrica is used to treat fibromyalgia.  *Fibromyalgia*, Mayo Clinic (Oct. 26, 2021), https://mayoclinic.org/ diseases-conditions/fibromyalgia/diagnosis-treatment/drc-20354785.

Plaintiff was stable, ambulatory, and rated her pain as a two out of ten.  R. at 659.

In February of 2021, Plaintiff had another telehealth appointment with P.A. Morrison, at which she complained of muscle aches in her chest after having an echocardiogram.  R. at 560. P.A. Morrison explained to Plaintiff that fibromyalgia may lower her pain sensitivity and advised that a warm compress may help.  R. at 560.  Plaintiff further reported that she felt Lyrica was gradually beginning to lose its effectiveness.  R. at 560.  P.A. Morrison referred her to pain management.  R. at 560.  In addition to fibromyalgia, Plaintiff also suffers from chronic low back pain.  R. at 556.  At an appointment in March 2021, P.A. Morrison noted that the cause of Plaintiff's low back pain is likely Baastrup Disease of the L5/S1.  R. at 556.

Plaintiff presented to Dr. Ali Baalbaki ("Dr. Baalbaki") with Sentara Pain Management Specialists in May of 2021.  R. at 549.  Upon examination, Dr. Baalbaki noted no trigger points, but some tenderness in Plaintiff's back, and that Plaintiff had pain with lateral rotation and extension.  R. at 551.  Dr. Baalbaki ordered x-rays, recommended injections, advised Plaintiff to stop taking Lyrica, prescribed Robaxin[6], and recommended Plaintiff begin physical therapy.  R. at 549.  At an appointment with P.A. Morrison the following month, Plaintiff reported that the Robaxin helped her symptoms "some," and she received a refill of that medication.  R. at 542. Despite Plaintiff's efforts to get injections approved by her insurance, her insurance repeatedly rejected her claim.  R. at 837, 843–44.

In September and October 2021, Plaintiff followed up with Dr. Baalbaki, and reported that her lower back pain continued to be an issue and worsened with prolonged standing and sitting. R. at 840, 842.  Plaintiff further reported that physical therapy provided her with minimal relief, and that her pain was interfering with her activities and sleep.  R. at 840, 842.  She rated her pain

---

[6] Robaxin is a muscle relaxer that is used to treat muscle pain and stiffness. *Methocarbamol Tablets*, Cleveland Clinic, https://my.clevelandclinic.org/health/drugs/18400-methocarbamol-tablets.

as a four or five out of ten. R. at 840, 842. At a telehealth visit with P.A. Morrison, he noted that Plaintiff's fibromyalgia was "stable" but that she does have flare ups. R. at 837. On October 26, 2021, Plaintiff received a bilateral lumbar facet steroid injection. R. at 834–35.

Plaintiff returned to Sentara Pain Management Specialists for an appointment with Nurse Practitioner Orean Turner ("N.P. Orean") on November 30, 2021. R. at 831. There, she reported that the steroid injection provided about fifty percent pain relief after the first week, but she was still experiencing pain that radiated down her legs. R. at 832. She reported that the Robaxin was no longer helping as a muscle relaxant and requested a different prescription. R. at 832. Plaintiff continued to treat various health concerns with P.A. Morrison. R. at 816–30. At a follow-up appointment on March 16, 2022, with N.P. Orean, Plaintiff reported that her pain was increasing, and on that date, she rated it as an eight out of ten. R. at 814–15. N.P. Orean recommended Plaintiff begin taking Lyrica again. R. at 815. She had begun ambulating with a cane. R. at 815.

Plaintiff received another steroid injection on April 7, 2022. R. at 812–13. At a follow-up appointment with N.P. Orean, she reported the injection alleviated about seventy percent of her pain. R. at 807.

### B. Physical Evaluations Completed by State Agency Examiners

P.A. Morrison completed a Medical Source Statement of Ability to Do Work-Related Activities on February 25, 2022. R. at 622–27. On a check-the-box form, P.A. Morrison opined on the following limitations: Plaintiff can never lift or carry weight between zero and ten pounds; Plaintiff can sit for thirty minutes at a time without interruption; Plaintiff can stand for thirty minutes in an eight hour workday; Plaintiff can never reach, handle, push or pull; Plaintiff can occasionally finger; Plaintiff can occasionally operate foot controls; Plaintiff can never climb stairs, ramps, ladders, or scaffolds; Plaintiff can never balance, stoop, kneel, crouch, or crawl;

Plaintiff can never be exposed to unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, extreme cold, or extreme heat. R. at 622–26. P.A. Morrison explained that Plaintiff "has weakness of the extremities, constant generalized pain, [and] needs a cane to ambulate." R. at 627.

At the initial level of review, Dr. Richard Surrusco determined there was insufficient evidence to determine Plaintiff's "medical and mental evaluations." R. at 68. Nonetheless, he determined Plaintiff's fibromyalgia was a severe medically determinable impairment. R. at 68. On the reconsideration level of review, Dr. Jack Hutcheson, Jr. determined Plaintiff would be capable of light work. R. at 83. He additionally found that Plaintiff would have the following exertional limitations: she could occasionally lift and/or carry twenty pounds; she could frequently lift and/or carry ten pounds; she could stand and/or walk (with normal breaks) for a total of six hours in an eight hour workday; she could sit (with normal breaks) for six hours in an eight hour workday; and that she must periodically alternate sitting and standing to relieve pain and discomfort. R. at 82. Dr. Hutcheson based his opinions on Plaintiff's symptoms related to degenerative disc disease, fibromyalgia, migraines, and chronic pain. R. at 82. Dr. Hutcheson also found that fibromyalgia was one of Plaintiff's medically determinable impairments and classified it as severe. R. at 80.

### C. Plaintiff's Testimony at ALJ Hearing

Plaintiff testified that she is unable to work because fibromyalgia causes extreme pain standing or sitting for too long. R. at 45. Plaintiff explained that she has received injections and physical therapy to treat her fibromyalgia. R. at 45. She treats her fibromyalgia with P.A. Morrison and she sees him approximately every six months. R. at 45. Plaintiff testified that she uses a cane to walk. R. at 46. Plaintiff homeschools her child. R. at 47. Plaintiff takes her child

to the park about two times a week. R. at 51. She grocery shops, but has a friend carry her groceries up the flight of stairs to her apartment. R. at 49. Plaintiff often needs help transitioning between sitting down and standing up. R. at 50–51. Plaintiff also suffers from headaches and migraines that may last up to a few days. R. at 52.

### III. <u>THE ALJ'S DECISION</u>

To determine if a claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. § 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the

7

claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 20, 2020. R. at 12. At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive affective disorder, anxiety disorder, scoliosis, lumbar degenerative disc disease, Baastrup disease at L5/S1, and migraines. R. at 13. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 14–16.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light level work, with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs, stoop, crouch, kneel and crawl; can occasionally climb ladders, ropes or scaffolds. [She] can tolerate occasional exposure to extreme cold, wetness, flashing lights, loud and very loud noises (as defined in DOT), vibration, concentrated respiratory irritants such as fumes, odors, dust, gases, and poorly ventilated areas, and hazards of unprotected heights and dangerous unguarded machinery. She is not capable of sustaining work requiring a specific production rate such as assembly line work or work that requires hourly quotas. [Plaintiff] can use judgment to make simple work-related decisions, can deal with occasional changes in a routine work setting, and can understand, remember, and carry out simple instructions. She can perform tasks on a regular and sustained basis to complete a normal workday and week.

R. at 16.

In making this determination, the ALJ considered "all symptoms and the extent to which

8

these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p." R. at 16.

At step four, the ALJ determined that Plaintiff did not have any past relevant work. E. at 23. However, at step five, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including retail marker, photocopy machine operator, and folding machine operator. R. at 23–24. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date of May 20, 2020, through the date of her decision, August 10, 2022. R. at 24.

## IV. <u>STANDARD OF REVIEW</u>

### A. Standard of Review Under the Social Security Act

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute

9

our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.  If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and the Commissioner applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

### B. Liberal Construction of Pro Se Filings

Generally, courts are required to provide pro se pleadings liberal construction, and to provide any benefit of the doubt to the pro se party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Elise J. v. Kijakazi*, No. 3:22cv440, 2023 WL 4056057, at *3 (E.D. Va. May 30, 2023), *report and recommendation adopted*, 2023 WL 4055365 (E.D. Va. June 16, 2023).  As explained in *Elise J.*,

> [t]his Court generally decides appeals under the [Act] by considering the issues raised and argued in a plaintiff's brief.  Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error.  However, when deciding a social security matter on the merits, a reviewing court should still scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence.  A claimant's failure to raise an error does not obviate the court's duty to correct blatantly obvious prejudicial errors.

2023 WL 4056057, at *3 (internal citations and quotations omitted).

### V. ANALYSIS

Plaintiff, proceeding pro se, filed a five-page submission that constitutes her brief in support of reversal and remand.[7]  ECF No. 20.  Therein, Plaintiff attributes her pain to "[s]evere [f]ibromyalgia which causes widespread pain throughout [her] back and other extremities." *Id.* Plaintiff directs the Court to P.A. Morrison's Medical Source Statement in support of her allegation

---

[7] As part of her submission, Plaintiff included three letters from friends or acquaintances that purport to outline their observations of Plaintiff's capabilities.  ECF No. 20 at 3–5.  The Court did not consider these letters in determining Plaintiff's arguments in support of remand.

that she has severe fibromyalgia. *Id.* Plaintiff further alleges various ways in which she can no longer participate in many of her activities of daily living. *Id.* at 2.

In response, the Commissioner acknowledged Plaintiff's pro se status and interpreted Plaintiff to argue that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to adequately consider P.A. Morrison's opinion; (2) the ALJ failed to adequately consider Plaintiff's alleged impairment of fibromyalgia; and (3) the letters Plaintiff submitted in support of her disability warrant remand. ECF No. 21 at 16–17.

Upon the Court's review of Plaintiff's brief, the Commissioner's brief, and the record, and in light of Plaintiff's pro se status, the Court interprets Plaintiff to argue that the ALJ failed to properly consider Plaintiff's fibromyalgia as a medically determinable impairment. For the reasons explained below, remand is warranted for ALJ to reconsider whether fibromyalgia is a medically determinable impairment.

At step two of the sequential analysis, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable impairments." § 416.920(a)(4)(ii). The regulations provide that a "medically determinable impairment" must:

> result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

§ 416.921. Further, the impairment must meet the durational requirement—that is, it must last or be expected to last for a continuous period of at least twelve months. § 416.909. Generally, at step two, an ALJ must identify a claimant's alleged impairments, explain whether they are medically determinable, and consider whether the claimant's medically determinable impairments

11

are severe. *See* § 416.920(a)(4)(ii). After considering a claimant's medically determinable impairments, the ALJ is tasked with formulating the claimant's RFC, and "must consider limitations and restrictions imposed by *all* of an individual's impairments" including those impairments that are not severe. SSR 96-8p, 1996 WL 362207, at *34477 (Jul. 2, 1996); § 416.945(a) Thus, even if nonsevere impairments alone do not significantly limit an individual's ability to work, the ALJ is required to consider the combined effects on nonsevere impairments with other impairments. SSR 96-8p, 1996 WL 362207, at *34477.

Specifically with respect to fibromyalgia, Social Security Rule 12-2p advises ALJs on how to evaluate whether fibromyalgia is a medically determinable impairment. SSR 12-2p, 2012 WL 3104869, at *2 (Jul. 25, 2012). Pursuant to SSR 12-2p, there are two sets of criteria to establish a person has a medically determinable impairment of fibromyalgia: (1) the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia ("The 1990 Criteria); and (2) the 2010 ACR Preliminary Diagnostic Criteria ("the 2010 Criteria"). *Id.*

Under the 1990 Criteria, a person has a medically determinable impairment of fibromyalgia if the person has all three of the following: (1) a history of widespread pain; (2) at least eleven positive tender points on physical examination; and (3) exclusion of evidence that other disorders that could cause the symptoms or signs. *Id.* at 2–3. Under the 2010 Criteria, a person has a medically determinable impairment of fibromyalgia if the person has all three of the following: (1) a history of widespread pain; (2) repeated manifestations of six or more symptoms of fibromyalgia or co-occurring conditions, including fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety, or irritable bowel syndrome; and (3) exclusion of evidence that other disorders that could cause the symptoms or signs.[8] *Id.* at 3.

---

[8] Social Security Ruling 12-2p provides examples of evidence that may rule out other disorders, and notes exclusion of other disorders may be demonstrated by "[l]abratory testing [such as] imaging and other

12

Here, at step two, the ALJ found that Plaintiff "was diagnosed with fibromyalgia, but the evidence does not support the diagnoses," and thus, the ALJ concluded that fibromyalgia was not a medically determinable impairment. R. at 13. With respect to the 1990 Criteria, the ALJ explained that Plaintiff did not meet the requirements because "[t]reatment notes failed to document the trigger points." R. at 13. As for the 2010 Criteria, the ALJ stated that Plaintiff did not meet the requirements "because there is not a well-documented history of widespread pain" and there is not "evidence that other disorders could cause the claimant's symptoms were excluded." R. at 13.

Under these circumstances, the Court finds that remand is warranted for the ALJ to reconsider whether fibromyalgia is a medically determinable impairment. The Court agrees that the record does not support a finding of fibromyalgia pursuant to the 1990 Criteria based on the lack of evidence in the record regarding trigger points. However, the Court finds that upon review of the record, the ALJ did not properly consider the record evidence in light of the 2010 Criteria, or did not base her decision on sufficient evidence.

In evaluating the 2010 Criteria, the ALJ first summarily states that "there is not a well-documented history of widespread pain." R. at 13. The record belies this conclusion. *See e.g.*, R. at 549 (complaining of low back pain); 560 (requesting referral to pain management); 585 (reporting decrease in pain from eight out of ten to two or three out of ten); 807 (reporting seven out of ten pain); 813 (reporting pain as an eight out of ten); 815 (same). The Commissioner points to evidence that following her initial diagnosis, Plaintiff's pain responded well to medication and injections. ECF No. 21 at 26. However, such evidence is probative of whether fibromyalgia is severe, not whether it is a medically determinable impairment. *See* § 416.921.

---

laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor." SSR 12-2p, 2012 WL 3104869, at *2 (Jul. 25, 2012).

Second, the ALJ summarily states that there is no evidence that other disorders which could cause the claimant's symptoms were excluded. R. at 13. However, again, the record belies this conclusion. For example, on November 11, 2019—what appears to be the first notation of fibromyalgia in Plaintiff's record—Dr. Reon noted that "imaging was done[,] as well as lumbar MRI without significant findings," and "[a]dditional labs [were] done to rule out inflammatory disease which includes normal CCP, CPK, sedimentation rate, rheumatoid factor, and C-reactive protein." R. at 361. Social Security Ruling 12-2p specifically identifies some of the testing Plaintiff underwent—imaging, as well as laboratory tests for sedimentation rate and rheumatoid factor—as the type of testing that would constitute evidence that other disorders could cause the claimant's symptoms were excluded. SSR 12-2p, 2012 WL 3104869, at *2 (Jul. 25, 2012). Accordingly, based on this record, the ALJ did not sufficiently explain how she concluded that there was not a well-documented history of pain nor evidence that other disorders were excluded.[9]

The Court acknowledges that there may be some confusion in the record regarding the extent to which Plaintiff was diagnosed with fibromyalgia and the extent to which her records meet the 2010 Criteria. However, because the ALJ's conclusions regarding the 2010 Criteria were not sufficiently explained, additional consideration and explanation is necessary. If the ALJ lacked sufficient information regarding Plaintiff's diagnosis, the ALJ was tasked with "mak[ing] every reasonable effort to obtain all available, relevant evidence to ensure appropriate and thorough evaluation." SSR 12-2p, 2012 WL 3104869, at *3 (Jul. 25, 2012). Social Security Ruling 12-2p provides the ALJ with guidance on how to determine whether fibromyalgia is a medically determinable impairment when there is insufficient evidence, which includes contacting treating

---

[9] The Court further notes that Dr. Hutcheson, the state agency examiner, found fibromyalgia to be a severe, medically determinable impairment. R. at 80. In evaluating his opinion and finding it at least partially persuasive, the ALJ did not acknowledge this finding. R. at 21.

providers, requesting additional records, asking the claimant for more information, or purchasing a consultative examination. *Id.* at \*4.

In *Caroline R. v. Kijakazi*, the court found remand was warranted where the record "allude[d] to—but fail[ed] to actually document—a [] fibromyalgia diagnosis." No. CV 22-3025, 2023 WL 5834755, at \*4 (D. Md. Sept. 8, 2023). There, the court acknowledged that the ALJ may have correctly determined the record did not support a finding that Plaintiff's fibromyalgia was medically determinable pursuant to the 1990 Criteria and 2010 Criteria. *Id.* Nonetheless, because the record repeatedly referenced a fibromyalgia diagnosis, the ALJ should have "inquire[d] as to whether this missing evidence was relevant at step two." *Id.* Similarly, here, Plaintiff's record is replete with references to her fibromyalgia diagnosis, and Plaintiff was treated with medication directed to fibromyalgia symptoms. *See, e.g.*, R. at 588–89 (starting Plaintiff on Lyrica to treat fibromyalgia). Under these circumstances, the ALJ must either seek additional information to fill in any gaps related to Plaintiff's fibromyalgia diagnosis, or provide further explanation why such evidence would not, or does not, meet the 2010 Criteria.

The ALJ's failure to sufficiently explain how fibromyalgia was not a medically determinable impairment renders the remainder of the ALJ's decision without substantial evidence. Because the ALJ did not sufficiently consider whether fibromyalgia was a medically determinable impairment, at step three of the sequential evaluation process, the ALJ did not fully consider whether fibromyalgia meets another listing either independently or in combination with another impairment. *See Jackie T. v. Kijakazi*, No. CV22-1309, 2023 WL 1424573, at \*4 (D. Md. Jan. 30, 2023) (citations and quotations omitted) (explaining how failing to find fibromyalgia a medically determinable impairment affects the remainder of the ALJ's decision). Additionally, when determining Plaintiff's RFC, the ALJ did not fully consider any possible symptoms related

15

to fibromyalgia that may affect Plaintiff's ability to perform work-related activities. *See id.* (noting that because fibromyalgia was found not medically determinable, the ALJ never engaged in the two-step analysis pursuant to *Arakas v. Comm'r*, 983 F.3d 83 (4th Cir. 2020)); *Caroline R.*, 2023 WL 5834755, at *4 (D. Md. Sept. 8, 2023) (finding the ALJ's failure to base their finding that fibromyalgia was not medically determinable upon a fuller evidentiary record was not harmless because the ALJ did not consider the effects of fibromyalgia in assessing the Plaintiff's RFC).

Because the ALJ failed to properly consider whether fibromyalgia is a medically determinable impairment rending the ALJ's decision without substantial evidence, the Court finds that it would be futile to address the remainder of the Commissioner's arguments in defense of the ALJ's decision. On remand, the ALJ is advised to consider the remaining arguments that the Commissioner identified and make any necessary adjustments.

## VI. <u>RECOMMENDATION</u>

Substantial evidence does not support the Commissioner's decision, and accordingly, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **VACATED** and **REMANDED.**

## VII. <u>OUTSTANDING MOTION</u>

Additionally, before the Court is the Commissioner's Motion to Dismiss for Lack of Prosecution, ECF No. 14. By Order dated June 28, 2023, the undersigned directed Plaintiff to file her brief for the requested relief on or before July 26, 2023. ECF No. 12. Plaintiff did not do so. On August 22, 2023, the Court entered a Show Cause Order ordering Plaintiff to file, within fourteen days of the date of the Order, an explanation and show cause why the undersigned should not recommend to the United States District Court Judge that her Complaint be dismissed for failure to prosecute or to comply with the rules and order of the Court. ECF No. 13. Plaintiff did

not respond to the Show Cause Order.

On September 6, 2023, the Commissioner filed a Motion to Dismiss for Lack of Prosecution, with a memorandum in support and a *Roseboro* Notice. ECF Nos. 14–16. The notice, issued pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Eastern District of Virginia Local Civil Rule 7(K), advised Plaintiff that failure to respond to the Motion to Dismiss within twenty-one days could result in dismissal of the action. ECF No. 16. Plaintiff did not respond to the Motion to Dismiss.

The Commissioner's Motion to Dismiss for Lack of Prosecution informed the Court that on June 26, 2023, due to a "scrivener's error," the Commissioner mailed the CD containing the Administrative Record to the wrong address. ECF No. 15 at 2. Specifically, the Commissioner mailed the CD to 302 ½ Central Avenue, when the Commissioner should have mailed the CD to Plaintiff's correct address—305 ½ Central Avenue. *Id.* On August 16, 2023, the Commissioner realized this mistake, and attempted to contact Plaintiff via telephone to determine if she received the Administrative Record. *Id.* at 3. However, Plaintiff did not respond to the call and the Commissioner was unable to leave a voice message due to Plaintiff's voicemail box being full. *Id.* That same day, the Commissioner sent Plaintiff a letter via First-Class Mail and email requesting that Plaintiff confirm whether she received the CD with the Administrative Record. *Id.* Plaintiff did not contact the Commissioner to confirm whether she received the Administrative Record. The Commissioner did not attempt to re-send the Administrative Record to Plaintiff's correct address.

Because the Commissioner did not re-send the Administrative Record to Plaintiff's correct address, the Court determined a hearing would be useful to determine whether Plaintiff received the Administrative Record, and whether she intended to prosecute her case.

On September 28, 2023, the Court held a hearing on the Show Cause Order. Plaintiff appeared at the hearing, as did Assistant United States Attorney Daniel Shean on behalf of the Commissioner. ECF No. 18. At the hearing, Plaintiff advised the Court that she was unable to respond to the Court's orders because of her health issues, but she still wished to proceed with her case. *Id.* She further confirmed that she received the administrative record from the Commissioner. *Id.* Accordingly, having found good cause to do so, the Court issued a new briefing order, which required Plaintiff to file her brief on or before October 19, 2023. ECF No. 19 at 1. Plaintiff filed her brief on October 11, 2023. ECF No. 20.

Ultimately, because of the Commissioner's mistake in sending Plaintiff her administrative record, which may have led to her delayed filing, as well as Plaintiff's appearance at the hearing and eventual filing of her brief, the undersigned finds that Plaintiff did not fail to prosecute her case. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's Motion to Dismiss, ECF No. 14, be **DENIED**.

## VIII. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is

made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
June 14, 2024